## EASTMAN vs. HOBBS.

1. If the parties to a pending suit, under the mistaken impression that the costs have been adjudged against the defendant, enter into a verbal contract, by which plaintiff agrees to pay the costs in the first instance, and defendant promises to re-pay them, and also the note on which the suit is founded, and which he admits to be just, in good accounts due the first day of January next thereafter, the promise is binding, and its validity is not affected by the mistake.

2. And if the plaintiff, on the verbal agreement being afterwards reduced to writing, fails to inform the defendant of the mistake, and conceals from him the fact (which he had himself discovered, and of which he knew defendant was still ignorant) that he had taken a nonsuit, this does not amount to a fraud on the defendant, nor enable him to avoid the written contract.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. JOHN E. MOORE.

COVENANT by James S. Eastman against James R. Hobbs, to recover damages for defendant's breach of his writing obligatory, of which the following is a copy :—

" An article of agreement, made and entered into, by and between Jas. R. Hobbs and Jas. S. Eastman, this 19th day October, 1851, both of the State of Alabama, Morgan county, witnesseth, that the said Hobbs agrees to pay to said East-man a certain note, with interest and cost that hath accrued up to this date, on which note said Eastman brought suit before William Ryan, and the said Hobbs appealed to the Circuit Court ; and the said Eastman agrees to take good accounts from the said Hobbs in payment of the above-named suit, which accounts are due the first day of January next ; and if the said Eastman should fail to collect any of the ac-counts, then Hobbs agrees to furnish others, until debt, in-terest and cost are satisfied, which the said Hobbs agrees to furnish next week. For the faithful performance of the above agreement, we hereunto set our hands and affix our seals, the day and year above written.

" J. R. Hobbs [seal].
" Jas. S. Eastman [seal]."

The breach assigned in the declaration was, the failure to

deliver the accounts. The defendant pleaded, payment, no consideration, failure of consideration, fraud, performance, no demand, deceit, and duress; and issue was joined on all these pleas.

On the trial, after the plaintiff had read in evidence the writing which was the foundation of the action, he next offered a transcript of the suit therein referred to, and the note on which it was founded, with the endorsement thereon. This note, which was for $48, was signed "J. R. & J. B. Hobbs," dated May 28th, 1850, and payable on the 25th of December next after date to James McNure, or order, by whom it was assigned to said Eastman for value received. The transcript showed that suit was instituted on this note before a justice of the peace, in the name of the payee for the use of Eastman; that the justice rendered judgment for the plaintiff, and the defendant appealed to the Circuit Court, where the plaintiff took a nonsuit.

"The plaintiff then proved the amount of costs in said suit, and also introduced proof tending to show that he had demanded of the defendant the accounts mentioned in said writing obligatory. The defendant then introduced a witness, who testified, that on the day of the date of said writing obligatory, which was Saturday, plaintiff and defendant went to his house to an early breakfast; that they told witness, that plaintiff had gone to the defendant's house by day-light, or perhaps a little before; that plaintiff and defendant lived four or five miles apart; that defendant told witness, that he had agreed to pay plaintiff the amount of said note and the costs of said appeal suit, in good accounts, that plaintiff was to pay said costs in cash, and defendant was to pay plaintiff in accounts, and that they were to meet at the house of witness that morning, the defendant to deliver (and plaintiff to receive) said accounts in payment of said note and bill of costs; that defendant was not then ready to deliver said accounts, and begged further time thereupon, to which plaintiff assented, but insisted that their said agreement should be reduced to writing and signed by both parties; that defendant then asked witness to write out said agreement, which witness finally did under the dictation of both parties, which resulted in the obligation sued on in this action. He

further stated, that plaintiff told him, before said agreement was written out, that said appeal suit had been decided against him, and requested witness not to tell defendant of that fact ; that witness did not tell defendant, and that he did not believe defendant knew how said suit had been decided ; and that plaintiff and defendant had left the court before it was finally decided.

" Defendant introduced another witness, also, who testified, that he told plaintiff on Friday evening that said suit had been decided against him ; also, another witness, who testified, that plaintiff was at his house on Friday evening, and that after the arrival of the last witness, and a conversation between him and plaintiff, plaintiff said he was sick, and went home ; also, another witness, who testified, that plaintiff told him that the defendant had agreed to pay said note and bill of costs in accounts, and that he had got defendant to sign said obligation without telling him that said appeal suit had been decided against him (plaintiff), and that he thought defendant did not know it had been so decided.   Defendant introduced another witness, also, who testified, that he was present when said appeal suit was tried ; that on said trial, the defendant moved to exclude said note from the jury, because on the back of it the payee had assigned it to the plaintiff ; that plaintiff then struck out said assignment, and the court then permitted said note to be read to the jury ; that the presiding judge said he would render a judgment in plaintiff's favor, but forebore to do so to allow defendant's attorney to produce authorities to show that he could not render a judgment in favor of plaintiff in such a case ; that after this, upon the production of authority, the court changed its opinion, and thereupon plaintiff's attorney took a nonsuit.   Another witness testified, also, that plaintiff told him on said Friday that he had got a judgment against defendant on said appeal suit.

" Plaintiff then introduced witnesses, who testified, that they were in court when said appeal suit was tried ; that it was tried on Wednesday ; that immediately after the trial plaintiff and defendant went out together, when the defendant exulted much at the result because he had got off his endorser, but said that the debt was just and he would pay it, and then proposed to plaintiff to pay said note and costs of suit in good

accounts, which proposition plaintiff accepted, and they then agreed that they would meet at the house of defendant's first witness on the next Saturday morning, and defendant would then deliver (and plaintiff receive) in discharge of said note and bill of costs good accounts on the first of January thereafter ; that plaintiff and defendant both left (for) home on the same evening, and that after they had left (perhaps on the next day, or the day after) the court so changed its opinion, and plaintiff's attorney took said nonsuit ; that at the time of making said verbal agreement, the presiding judge had not changed his opinion that judgment should go for the plaintiff, and did not so change his opinion until after the parties had left town under the impression that judgment had been rendered in favor of the plaintiff.

This being all the proof in this cause, plaintiff asked the court to charge the jury, that if they believed that the *contract to pay the note and costs of said appeal suit whilst said suit was pending* (?), and the making of this obligation (the foundation of this suit) was not a new contract, but was merely carrying out the contract and agreement made whilst the suit was pending, then plaintiff was entitled to recover. This charge the court gave, but qualified it by adding, that if they believed that the parties, at the time the contract was first spoken of and agreed upon, respectively understood and believed that the costs were adjudged against Hobbs, and if they should also believe that it was owing to such understanding and belief that the agreement was entered into between them, and that Eastman afterwards, knowing that Hobbs had made the first agreement induced by such belief and misapprehension, artfully concealed, on the occasion of afterwards reducing it to writing, the fact that the costs had been adjudged (against) himself by the court, knowing at the time that Hobbs was entering into the written contract in utter and entire ignorance of the true facts of the case, and under the further belief and knowledge that Hobbs would (*not ?*) enter into such contract were he placed in possession of the facts as they existed,—that they might, in settling the question of fraud, weigh these circumstances, and give what weight they pleased to them ; to which opinion of the court, in thus qualifying the charge asked, the plaintiff excepted.

" Plaintiff further asked the court to charge the jury, that under all the facts in this case, plaintiff was under no legal obligation to tell defendant that he had taken a nonsuit, and that a judgment for costs had gone against him, when defendant signed the obligation sued on ; which charge the court gave, but qualified it by charging, that if they believed that plaintiff, at the time of the execution of said obligation, artfully and fraudulently concealed from defendant the fact that a judgment for the costs had been rendered against him (plaintiff),—this was a circumstance which they might weigh in determining the question of fraud ; to which opinion of the court, in thus qualifying the charge asked, the plaintiff also excepted."

The rulings of the court in the charges are now assigned for error.

ROBINSON & JONES, for the appellant :

The evidence shows that Hobbs admitted the justness of the note first sued on, and this shows that the whole contest was about the costs. Admit that Hobbs was not bound to pay the costs ; that, at most, would only amount to a partial failure of consideration, while the qualification to the first charge asked made it cover the whole consideration. But when the parol agreement was made, no judgment had in fact been rendered—the court only delayed its judgment ; and therefore it could not then be known who was bound to pay the costs. The parol agreement, made while matters were thus suspended, put an end to the whole litigation : Eastman undertook to pay the costs in the first instance, and Hobbs undertook to re-pay them and the debt in claims upon others. Under this agreement, Eastman was bound to take either a nonsuit or a dismissal : he could not have taken a judgment for debts or costs, without a violation of his contract. That he afterwards took a nonsuit, was but a compliance with his contract, and a part performance of it ; and as he was under no legal obligation to inform Hobbs of that fact, his failure to do so could not amount to a fraudulent concealment.

D. C. HUMPHREYS, contra :

1. At the time the parol agreement was made, both parties

thought that the defendant was under a legal obligation to pay the costs ; and if there had been no subsequent concealment, or other fraudulent act on the part of the plaintiff, this mistake would have released defendant from his promise, as a failure of the consideration in a material point will rescind the contract *in toto*.—Story on Contracts, § 481 ; Parsons on Contracts, pp. 362-3 ; Cabot v. Haskins, 3 Pick. 83 ; Warder v. Tucker, 7 Mass. 449 ; 4 *ib*. 347.

2. The subsequent written agreement was not only without consideration, but void for fraud. At the time it was entered into, Eastman knew that judgment for costs had gone against him, while Hobbs did not know it, and Eastman knew that Hobbs did not know it, and even requested the witness not to tell him the truth. This suppression of a material fact was a fraud, which vitiated the contract.—Parsons on Contracts, pp. 460 to 467 ; Huckabee v. Albritton, 10 Ala. 657 ; Jackson v. Sternberg, 20 Johns. 49 ; Hazard v. Irwin, 18 Pick. 107 ; 14 Wend. 195 ; Story on Contracts, p. 446 ; Meredith's Emerigon on Insurance, p. 17, ch. 1.

GOLDTHWAITE, J.—We think the question, whether the court erred in its charges to the jury, is determined by settling the validity of the verbal agreement first entered into by the parties. In relation to this contract, conceding that Hobbs, at the time of its making, believed that a judgment had been rendered against him for the amount of the note and costs, and would not have made it had he not believed such was the case ; still, we are satisfied, under the facts disclosed by the record, it was binding upon him. So far as this agreement was concerned, there was no fraud practiced, nor any unconscionable advantage taken by the other party ; but under the mistaken expression that the court had decided against him—a mistake as to a fact which he had the means of ascertaining—he agrees to pay the note in suit, which he concedes he owes, and the costs, an accounts due at a future day, to the other party, who is bound to take them in discharge of his debt, and to pay the costs. There is nothing in the evidence tending to show that Eastman was influenced by the supposed decision of the court in his favor, in entering into the contract, so that he would be bound by it. To hold

the one party to the agreement, and discharge the other, in a case where there was no fraud, would be manifestly unjust, and we have found no case going to that length. We agree, that if the subject-matter of the contract had no existence, then the mistake would entitle both parties to be relieved. But this is not the case : it is not pretended that the debt was not due from Hobbs, or that the costs had not accrued, or that he had not the means of ascertaining the real state of the facts. Under these circumstances, we are of opinion, that the mistake made by the appellee, in supposing that the case had been decided against him, when it had not been thus determined, has no influence upon the contract we have considered.

Regarding the verbal agreement as valid and effectual, the question then is, whether the conduct of Eastman, in concealing the fact that the costs had been subsequently adjudged against him, instead of the other party, could be properly taken into consideration by the jury, to avoid the effect of the written contract, either in whole, or in part. That Eastman took a non-suit, and that the costs were adjudged against him, had no effect whatever upon the verbal agreement, which had previously been entered into, we think clear. That fact would have furnished the appellee with no legal excuse for failing to comply with it ; and there could, for that reason, be no legal obligation resting upon Eastman to inform him of it, so far as the rights of the parties depended upon the verbal agreement. The evidence incorporated into the bill of exceptions shows, that the written contract was nothing more than a reduction to writing of the terms of the agreement which had existed in parol only. In cases of fraudulent misrepresentation, the fraud must relate to something material, constituting an inducement, or motive to the contract, by which the party practiced upon is misled to his injury (Story's Eq. § 195); and when the misrepresentation is not material, or not followed by legal injury, however objectionable it may be in point of morals, the law, looking alone to practical results, gives no redress. If the verbal agreement was valid, a fact which could in no wise have affected its validity, could not properly be regarded as a legal inducement with the parties in reducing its terms to writing, or as the cause of

any legal damage to the party, as under the written agree-
ment he is required to do no more than he is bound to do
under the terms of the verbal contract.

From what we have said it is obvious, that the charges of
the court, which authorized the jury to take into considera-
tion the concealment of the fact referred to in the record,
against the appellant, were erroneous.

Judgment reversed, and cause remanded.